UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

DANIEL M.[1],　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　)　　CIVIL NO. 1:19cv131
　　　　　　　　　　　　　　　　　　　)
ANDREW SAUL,　　　　　　　　　　　　 )
Commissioner of Social Security,　　)
　　　　　　　　　　　　　　　　　　　)
　　　Defendant.　　　　　　　　　　　)

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB), as provided for in the Social Security Act. 42 U.S.C. § 423(a), § 1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act

on March 31, 2018.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 28, 2015 through his date last insured of March 31, 2018 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: hernia, hypertension, degenerative disc disease, osteoarthritis, left second distal phalangeal amputation and obesity (20 CFR 404.1520(c)),

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant could perform frequent bilateral fingering. The claimant could have no more than frequent exposure to pulmonary irritants such as fumes, odors, dusts, gases, poorly ventilated areas, and chemicals. The claimant could have no more than occasional operational control of dangerous or moving machinery and work at unprotected heights. The claimant could perform frequent overhead reaching with the dominant upper extremity. The claimant could occasionally use foot controls. The claimant could perform frequent near acuity. The claimant could avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, or approaching people or vehicles.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20- CFR 404.1565).

7. The claimant was born on December 11, 1965 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 28, 2015, the alleged onset date, through March 31, 2018, the date last insured (20 CFR 404.1520(g)).

(Tr. 18 - 28).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on October 31, 2019. On December 11, 2019, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff allegedly suffers from the following impairments: lumbosacral degenerative disc disease, lumbar facet arthropathy/lumbar stenosis/lumbar radiculopathy, bilateral neuropathy of the feet, osteoarthritis, left second distal phalangeal amputation, left epicondylitis, right shoulder impingement syndrome, left knee meniscus tear, chronic pain disorder, hypertension, chronic obstructive pulmonary disease/asthma, obstructive sleep apnea, morbid obesity, incarcerated umbilical hernia, blurred vision/cataracts.

In support of remand, Plaintiff first argues that the ALJ failed to build an accurate and logical bridge between the evidence and her conclusions. More specifically Plaintiff argues that the assessed RFC is inconsistent with his severe and non-severe impairments: neuropathy in both feet, lumbar stenosis with radiculopathy, umbilical hernia, and obesity. However, the ALJ considered all of these impairments in the decision (Tr. 23-26), and she explained that they supported an RFC for a reduced range of light work, with a variety of additional postural, manipulative, visual, and environmental limitations, as set forth above. The ALJ further explained her basis for the RFC finding by referring to the medical record and the opinion evidence (Tr. 23-26).

Plaintiff disputes the ALJ's interpretations of the evidence, but his alternate view of the evidence does not render the ALJ's findings any less valid. *See Biestek v. Berryhill*, 139 S. Ct. 1148,1154 (2019). The ALJ explained her basis for the limitations she included in RFC, and there is "more than a mere scintilla" of evidence to support her findings. After a thorough review of the

5

medical record (Tr. 19-21), the ALJ found that Plaintiff had non-severe impairments of left epicondylitis, right shoulder impingement syndrome, chronic obstructive pulmonary disease and/or asthma, cardiac dysrhythmias, obstructive sleep apnea, and reduced vision (Tr. 19). With respect to these non-severe impairments, the ALJ found that "there were no significant objective medical findings in the record to support more than minimal limitations on [Plaintiff's] ability to perform work activities arising from these claimed impairments" (Tr. 19). Plaintiff has not countered this finding with any citation to record evidence.

The ALJ found that Plaintiff had severe impairments of hernia, hypertension, degenerative disc disease, osteoarthritis, a finger amputation on the left hand, and obesity (Tr. 19). The ALJ evaluated the medical record impairment-by-impairment and described how she considered them in assessing the RFC (Tr. 23-26). The ALJ began by stating that she accounted for Plaintiff's history of umbilical hernia "by limiting [Plaintiff] to light work with a reduced ability to perform postural functions" (Tr. 23). The ALJ observed that Plaintiff's treatment for this impairment was several years before the date last insured, there has been "very little treatment" since, and Plaintiff declined hernia repair surgery (Tr. 23). The ALJ concluded that Plaintiff's alleged symptoms due to his past hernia were inconsistent with the medical record (Tr. 23).

As for Plaintiff's hypertension, the ALJ found that Plaintiff tolerated medication well (Tr. 24-25). The ALJ also observed that Plaintiff was not taking his blood pressure medication regularly (Tr. 24-25 (citing Tr. 519, 562)). With respect to Plaintiff's degenerative disc disease and osteoarthritis, the ALJ addressed MRIs and x-rays showing degenerative changes, spinal stenosis, and foraminal narrowing in Plaintiff's spine (Tr. 23 (citing Tr. 490, 488, 539)). Imaging studies of Plaintiff's knees were "unremarkable" (Tr. 24 (citing Tr. 467-71)). The ALJ then

explained that physical examinations showed pain, but also good strength and range of motion (Tr. 24). Plaintiff could also walk normally (Tr. 24 (citing Tr. 572)). Plaintiff was treated with pain medication, but he reported that he did not take it regularly (Tr. 24 (citing Tr. 541, 721)).

Next, despite Plaintiff's finger amputation, the ALJ observed that Plaintiff could perform a variety of fine finger actions, including picking up small objects, buttoning shirts, tying shoe laces, and opening doors (Tr. 25). At the consultative examination (CE), Plaintiff demonstrated full grip strength (Tr. 25 (citing Tr. 461-63, 519-21, 601)). The ALJ explained that the RFC finding "include[d] a fingering limitation to account" for this impairment (Tr. 25).

The ALJ also considered Plaintiff's obesity (Tr. 25). However, the ALJ observed that Plaintiff showed full musculoskeletal range of motion, and a pulmonary function test showed a "mild restrictive defect" only (Tr. 883). Therefore, the ALJ concluded that the light RFC with additional restrictions would accommodate Plaintiff's obesity.

Finally, the ALJ pointed out that "the record does not contain an opinion from a treating or examining source physician . . ." (Tr. 25). However, the ALJ considered and gave weight to the State agency consultant who assessed Plaintiff's RFC at reconsideration (Tr. 233-35). In an August 2016 RFC assessment, J. Sands, M.D. opined that Plaintiff could perform light work with occasional postural movements and frequent fingering (fine manipulation) (Tr. 233-35). The ALJ explained that he gave it moderate weight because he found that Plaintiff's testimony and his impairments – both severe and non-severe – supported the inclusion of additional RFC limitations (Tr. 26).

Plaintiff points to evidence regarding his neuropathy, lumbar stenosis, umbilical hernia, and obesity, arguing that "it defies logic that someone with that particular combination of

7

impairments" could perform light work. However, as explained above, the ALJ addressed these impairments and explained how she incorporated any resulting limitations into the RFC (Tr. 23-25). Based on the record and Plaintiff's severe impairments, the ALJ found that Plaintiff could perform a reduced range of light-level work, with additional postural, environmental, manipulative, reaching, and visual limitations (Tr. 22). The ALJ explained that this RFC "takes into account [Plaintiff's] testimony and the evidence of his hernia, hypertension, degenerative disc disease, osteoarthritis, left second distal phalangeal amputation, and obesity" (Tr. 26). Plaintiff has not identified any specific medical evidence showing that he could not do light work with the restrictions listed in the RFC. He seems to hope that the court will assume he is disabled because he has severe impairments. However, people with severe impairments work every day, and unless Plaintiff meets his burden of showing he is incapable of any work, then he is not entitled to disability benefits. This court finds that the RFC is supported by substantial evidence, and remand is not warranted on this issue.

Next, Plaintiff argues that the ALJ erred in failing to give substantial credibility to Plaintiff for his strong work history. Plaintiff fails to explain how further consideration of his work history would have affected the outcome of the case. Although "a consistent work history weighs in favor of a positive credibility finding, it is still just 'one factor among many, and it is not dispositive.'" *Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017) (citing *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)). Even though this factor was not addressed in the hearing decision, "an ALJ is not statutorily required to consider a claimant's work history." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016).

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong.

*Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir. 2012). Factors relevant to the evaluation of Plaintiff's symptoms include treatment (other than medication) received for the relief of pain or other symptoms, medication taken to alleviate pain or other symptoms, and daily activities. 20 C.F.R. § 404.1529(c). An individual's subjective statements are insufficient to establish disability. 20 C.F.R. § 404.1529(a) (statements about your pain or other symptoms will not alone establish that you are disabled).

In the present case, the ALJ considered multiple factors in evaluating Plaintiff symptoms – specifically, Plaintiff's treatment history, medication regimen, and daily activities. First, the ALJ found that "the record reflects only conservative treatment for [Plaintiff's] degenerative disc disease and osteoarthritis, and it further shows that [Plaintiff] was not compliant with said treatment" (Tr. 24). The ALJ observed that Plaintiff's treatment consisted primarily of pain management and routine follow-up visits where his treating physicians prescribed medication (Tr. 24 (citing Tr. 439, 447, 498, 564, 721)). Further, he attended only one physical therapy session before being discharged (Tr. 24 (citing Tr. 606, 609)). And, although the ALJ accommodated Plaintiff's umbilical hernia by restricting him to light work, the ALJ found that "there has been very little treatment for this impairment" (Tr. 23 (citing Tr. 562, 884)). The ALJ noted that Plaintiff declined hernia repair surgery several years before the date last insured, and there has been no further treatment for this impairment (Tr. 23 (citing Tr. 562)). Therefore, based on Plaintiff's course of treatment, the ALJ reasonably concluded that Plaintiff's impairments were not as severe as he had alleged (Tr. 26).

The ALJ also considered Plaintiff's inconsistent use of pain medication. In relation to his treatment for his back impairments, Plaintiff admitted that he was not taking pain medication

regularly (Tr. 24 (citing Tr. 541, 721)). Plaintiff was also noted to have not been taking his blood pressure medication regularly (Tr. 25 (citing Tr. 519, 562)). Accordingly, the ALJ reasonably concluded that Plaintiff's inconsistent use of medication contradicted his allegations and did not support the alleged severity of his impairments (Tr. 26).

Finally, the ALJ found that Plaintiff remained capable of performing a wide variety of daily activities (Tr. 25). The ALJ pointed out that Plaintiff cares for his own personal hygiene, continues to drive, and does household chores (Tr. 25). Plaintiff also showed that he could pick up small objects, open doors, write, and use full strength with his arms and hands (Tr. 25 (citing Tr. 461-63, 519-21, 601)). Based on these activities, the ALJ reasonably concluded that Plaintiff could perform light work, with additional postural, manipulative, and environmental limitations (Tr. 22). This court finds that the ALJ properly evaluated multiple factors in evaluating Plaintiff's symptoms, and the ALJ's findings were supported by substantial evidence. *Mullen v. Colvin*, No. 1:16-cv-172, 2017 WL 744700, at *5 (N.D. Ind. Feb. 27, 2017) ("the ALJ properly considered the nature and effectiveness of Plaintiff's treatment in making his credibility determination") (citing *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006)). Accordingly, there is no basis for remand on this issue.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: February 24, 2020.

s/ William C. Lee
William C. Lee, Judge
United States District Court
